IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-515-FL

| | |
|---|---|
| GARY L. JOHNSON, )<br>)<br>Claimant/Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Gary L. Johnson ("Claimant") seeks judicial review of the Commissioner's denial of his applications for disability insurance benefits ("DBI") and Supplemental Security Income ("SSI"). After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends that Claimant's Motion for Judgment on the Pleadings [DE-20] be denied and the Commissioner's Motion for Judgment on the Pleadings [DE-22] be granted.

## STATEMENT OF THE CASE

On January 25, 2006, Claimant protectively filed his applications for DBI and SSI, alleging disability beginning October 15, 2005. (R. 55-59.) Claimant alleged disability due to "fractured bone in hip, diabetes and glaucoma." (R. 89.) Claimant's applications were denied initially, and upon reconsideration. (R. 40-42, 46-50.) Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on February 21, 2008. (R. 14.) The ALJ issued a decision denying Claimant's application on April 3, 2008, and the Appeals Council denied Claimant's request for review on

September 8, 2008 (R. 3-5, 14-22), rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. Walls, 296 F.3d at 290; 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. Walls, 296 F.3d at 290. Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and sufficiently explained his findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity,

the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se. If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform his past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry his burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the following errors: (1) the ALJ failed to adequately review the records and explain his conclusions; (2) the ALJ erred in his credibility determination, which resulted in an improper RFC; and (3) the ALJ improperly relied on VE testimony, by asking the VE a hypothetical based on an erroneous RFC.

**II.    The ALJ's Findings**

3

The ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920. (R. 16-23.) The ALJ first found that Claimant had not engaged in substantial gainful activity since October 15, 2005, the alleged onset date. (R. 16); see 20 C.F.R. §§ 404.1520(b) & 416.920(b). The ALJ then proceeded to step two and found that Claimant suffered from the severe impairments of osteoarthritis right hip and diabetes mellitus. (R. 16); see 20 C.F.R. §§ 404.1520(c) & 416.920(c). However, at step three the ALJ determined that Claimant's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 17); see 20 C.F.R. §§ 404.1520(d)-(e) & 416.920(d)-(e). Next, the ALJ determined – based on all the evidence in the record, including medical records, and Claimant's subjective complaints – that Claimant had the RFC to engage in light work activity with a sit/stand option. (R. 17-20); see 20 C.F.R. §§ 404.1520(e) & 416.920(e). At step four, the ALJ found that Claimant was unable to perform any past relevant work. (R. 20); see 20 C.F.R. §§ 404.1565 & 416.965. At step five, the ALJ determined Claimant was 49 years old on the date the application was filed, had a limited education, and was able to communicate in English. (R. 20.) Based on those factors, as well as Claimant's RFC, the ALJ determined that although Claimant could not perform any past relevant work experience, he could perform jobs such as a cashier, sorter, and assembler. (R. 21); see 20 C.F.R. §§ 404.1560(c) & 416.960(c). As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, from October 15, 2005, through the date of his decision. (R. 21); see 20 C.F.R. §§ 404.1520(g) & 416.920(g).

## III. The Administrative Hearing

### A. Claimant's Testimony at the Administrative Hearing.

Claimant testified at his administrative hearing on February 21, 2009. (R. 193-225.) He was 53 years old at the time of the hearing and not married. (R. 196.) He lives in a trailer on a friend's property. (Id.) He does not pay rent, but does work, including raking the yard, cutting the grass, taking the trash out, and changing light bulbs or fuses, for his friend in exchange for living on her property in her trailer. (R. 196-97.) He left school after the tenth grade. (R. 197.) Claimant has a driver's license and owns a car. (R. 199.) He rakes leaves and cuts grass to earn money so that he can pay for the insurance on his car. (Id.) He would use his car to drive around town, pick up groceries, and go to doctor's appointments. (Id.) He had not driven his car for a few weeks at the time of the hearing because it needed some work, and because his insurance had lapsed. (R. 206.)

The last job that Claimant had was with Holden Temporaries, in which he performed maintenance work, such as sweeping and taking out the trash, for one week in June or July of 2008. (R. 200-01.) Claimant has not tried to obtain additional temporary work because most of it is construction, which he cannot perform because of his hip problems. (R. 202.) Before working for Holden Temporaries, he worked for Ryan's Steakhouse as a dishwasher for three months. (R. 202-03.) He had to leave that job because of the pain in his hip. (R. 203.) Before working at the steak house, Claimant worked at Seymour Johnson Air Force Base, doing construction and operating

5

a back hoe; that job lasted approximately two years. (R. 204.) Before that, he worked at Belk's Department store in stocking and receiving. (Id.)

Claimant has hip pain due to a cracked hip bone, and usually uses a cane when walking, but did not bring it with him to his hearing. (R. 205, 207.) His hip and leg give out when he puts weight on it. (R. 205-06.) He has problems sitting and standing, and almost fell down when he had to stand to take his oath before testifying. (R. 205.) Claimant also suffers from diabetes. (R. 208.) He takes medication for his diabetes, which he receives free from a clinic. (R. 208-09.) The last time he went to the clinic, his blood sugar was high, and as a result his dosage of medication will likely increase. (R. 209.) He has some tingling in his feet due to his diabetes. (R. 210.) As a result of his diabetes, Claimant also has trouble seeing with his left eye; he has not received medication for his eye problem. (R. 210-11.)

Claimant can sit for only 45 minutes or an hour before he has to stand up to relieve the pain. (R. 212-13.) He has the same limitations with standing, before he has to sit down. (R. 213.) He can walk only about two blocks, because of the pain. (R. 214.) However, Claimant is on pain medication, which helps some. (R. 213.) He lies down for about an hour a day, to rest. (R. 215.)

### B. Vocational Expert's Testimony at the Administrative Hearing

Dr. Dixon Pearsall, a vocational expert, testified at the administrative hearing. (R. 218.) The VE noted that Claimant's prior work could not be classified as either medium or heavy. (R. 219-20.) The ALJ then posed the following hypothetical to the VE:

> If I find the claimant's residual functional capacity is such that he has the maximum sustained exertional work capacity to perform light work as

defined in the regulations; and furthermore, that, due to osteoarthritis, he would need a sit/stand option, . . . with those restrictions, do you know of any jobs which exist in significant numbers in the region which you believed he is vocationally qualified to perform, based on his age, education, training, and background?

(R. 221.) The VE responded that there were positions that Claimant could perform. (Id.) He noted that Claimant could perform the following jobs: cashier (DOT 211.462-010, light work with an SVP of 2); sorter or table worker (DOT 789.687-146, light work with an SVP of 2); and assembler (DOT 706.687-010, light work with an SVP of 2). (R. 221-22.) The VE concluded that those jobs exist in significant numbers in both the state and national economies. (Id.)

Claimant's lawyer then asked the VE if the number of jobs that the hypothetical claimant could perform would decrease if he had to miss work consistently or had to take continuous breaks. (R. 222-23.) The VE responded that such limitations would preclude a person from working at all. (R. 223.)

### IV. Claimant's Arguments

#### A. The ALJ Adequately Reviewed the Records and Explained His Conclusions

Claimant argues that the ALJ failed to consider all of the evidence in the record. Specifically, Claimant contends that the ALJ considered only the medical records that suggested Claimant was not disabled, but did not adequately review his diabetes or hip problems. The Court disagrees.

The ALJ noted that he considered the entire record prior to making his determination. (R. 17.) Then, in two and a half single-spaced typed pages, he summarized the majority of Claimant's medical records as well as Claimant's testimony.

7

(R. 17-20.) The ALJ was not required to comment on every piece of evidence in the record. See, e.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); Anderson v. Bowen, 868 F.2d 921, 924 (7th Cir. 1989). Moreover, Claimant did not provide an extensive array of medical evidence in support of his claim. Nonetheless, the ALJ noted, with regard to Claimant's glaucoma, that he was examined in March of 2006, and that his best corrected visual acuity for both his left and right eyes was 20/30. (R. 17.) The ALJ further noted that although Claimant was diagnosed with chronic opin-angle glaucoma, left eye, his visual fields were intact. (Id.) Further, Claimant testified that he had a driver's license and could drive around town. (R. 199.) Finally, the ALJ noted that when Dr. Muhammad Bhatti, a consultative examiner, examined Claimant in March 2009, he stated that he did not have visual disturbances, except for difficulty seeing at a distance. (R. 168.) Accordingly, the ALJ thoroughly reviewed the relevant medical records and Claimant's testimony, as it relates to his glaucoma, and found that he did not suffer from a severe eye impairment. (R. 17.)

Claimant also asserts that the ALJ failed to consider the severity of his diabetes. To the contrary, the ALJ's decision addressed the medical records dealing with Claimant's diabetes. (R. 18.) The ALJ concluded that Claimant suffers from the severe impairment of diabetes mellitus. (R. 16.) The ALJ noted that Claimant has had wildly fluctuating glucose readings and has had some difficulty remaining medically compliant, which is borne out by the records. (R. 18, 120-26.) The ALJ also noted that Claimant told Dr. Bhatti that when he did take his diabetes medication, his blood sugars were much better. (R. 168.) Claimant asserts in his brief that he was not medically compliant

because he could not afford medication. However, that directly contradicts his testimony at the hearing, in which Claimant stated that he received free medication for his diabetes from a local clinic. (R. 208-09.) If a Claimant is able to control an ailment with medication, then it is not considered disabling. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling").

Finally, Claimant contends that the ALJ failed to take into account Claimant's hip impairment, which Claimant argues satisfies Listing 1.02. 20 C.F.R. § 404, Subpart P, App. 1. The Court concludes that Listing 1.02 does not apply to Claimant because he does not have the requisite inability to ambulate effectively. Listing 1.02 deals with major dysfunction of a joint and allows for disability when a Claimant can show the following:

> [G]ross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. § 404, Subpart P, App. 1, Listing 1.02. Claimant testified that he does odd jobs, such as raking and mowing for his landlady, that he can walk two blocks, and that

he drives around town to do errands. Under Listing 1.02, Claimant must be unable to walk sufficiently to carry out activities of daily living—evidence of which may be shown by requiring the assistance of two canes to walk. See 20 C.F.R. § 404, Subpart P, App. 1, Listing 1.00(B)(2)(b). Claimant indicated that he uses a cane to walk, however, he never suggested that he uses two canes and, based on his hearing testimony, is able to perform activities of daily living.

The ALJ did conclude that Claimant suffered from the severe impairment of osteoarthritis right hip (R. 16) and noted that a 2003 x-ray of Claimant obtained showed a slight flattening of the right femoral head suggesting a slightly depressed fracture and moderate osteoarthritis. However, in 2006, when Dr. Bhatti evaluated Claimant, he found that Claimant had full range of motion in all extremities, negative straight-leg raise testing seated and supine, normal reflex, motor, and sensory findings, and was able to stand on his toes and bend without difficulty. (R. 19, 167.) Moreover, Dr. Bhatti's notes indicate that Claimant stated that he has no problem walking when he takes medication, although Claimant's testimony at the hearing contradicts this statement. (R. 167, 213.)

Claimant asserts that the ALJ should have relied on evidence in addition to Dr. Bhatti's evaluation. While the ALJ relied heavily on Dr. Bhatti's opinion in reviewing Claimant's impairments, this was not unreasonable. Dr. Bhatti's evaluation was conducted after the alleged disability onset date, while many of the medical records Claimant provided predated the alleged onset date of October 2005, and therefore are not relevant to the current disability determination. Accordingly, the ALJ appropriately

10

considered all the medical evidence in the record and his RFC determination is supported by substantial evidence.

## B. The ALJ Performed an Adequate Credibility Assessment

Claimant argues that substantial evidence does not support the ALJ's findings that Claimant's allegations of pain and functional restrictions were not fully credible. Accordingly, Claimant contends that the ALJ erred in determining that he had the RFC to perform light work, with a sit/stand option. The Court disagrees.

In assessing a claimant's credibility, the ALJ must follow a two-step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however the claimant's

11

statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible to the extent that they are inconsistent with residual functional capacity assessment for the reasons explained below." (R. 19.) The ALJ then provided specific reasons for his adverse credibility findings. The ALJ noted that Claimant's testimony at his hearing belied his claims of total disability:

> The claimant's allegations of total disability are contradicted, however, by his testimony of his functional abilities and daily activities. Although he said that he had difficulty walking more than two blocks and standing or sitting for more than 45-60 minutes, he has also reported that he has no difficulty walking when he takes his Celebrex. He asserted that he was able to live in his trailer rent-free in exchange for cutting the grass, raking leaves and taking out the trash for himself and his landlord. He said he has a driver's license and was able to drive to the grocery store and his medical appointments. The claimant testified that the day before his hearing, he picked up aluminum cans in his neighborhood to sell for kerosene which he said he used to heat his trailer.

(R. 19.) The ability of a claimant to perform activities of daily living that are inconsistent with statements of debilitating pain can be used as evidence that a claimant is not disabled. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (concluding that a claimant's assertions that she attended church, watched television, cleaned the house, washed clothes, visited relatives, fed the family pets, cooked, managed household finances, and performed stretches recommended by her chiropractor supported the ALJ's adverse credibility finding); see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day).

12

In addition, the ALJ summarized Claimant's medical records, which indicated that Claimant has only mild limitations resulting from his impairments. (R. 19-20.) As noted above, Claimant's claims of disability based on his diabetes is undermined by his failure to follow his medication regime. In addition, the ALJ noted that Dr. Bhatti found that Claimant had a full range of motion in all extremities and that his medication made walking much easier. (R. 19.) The medical records support the ALJ's conclusion that Claimant could perform a limited range of light work. Moreover, the ALJ took into consideration Claimant's complaints that he was limited in his ability to sit and stand for prolonged periods of time when determining his RFC. As a result, he required the VE to suggest jobs that Claimant could perform that involved light work and a sit/stand option. Accordingly, the ALJ took into consideration Claimant's allegations of pain and functional restrictions when determining his RFC.

The ALJ thoroughly explained his credibility analysis. The fact that Claimant can point to other evidence in the record that supports his claimed impairments and the alleged severity of his pain does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d, 1453, 1456 (4th Cir. 1990). It is not the responsibility of the Court to determine the weight of the evidence. Id. Here, the ALJ pointed to evidence in the record to support his conclusion that Claimant was not totally credible. Therefore, he satisfied his duty under the applicable regulations and law and did not err in finding Claimant not fully credible.

C. **Hypothetical Posed to VE**

Finally, Claimant argues that the ALJ failed to adequately account for his impairments in the hypothetical posed to the VE. Courts have repeatedly held that questions to a VE must precisely set out the claimant's individual physical and mental impairments. Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir. 1989). However, the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992). If the ALJ does not believe that the plaintiff suffers from one or more claimed impairments and if substantial evidence supports that conclusion, then the ALJ is not required to include those impairments in his questioning of the VE. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

In this case, as described above, the Court believes that the ALJ did not err in determining Claimant's RFC and in finding him not entirely credible. Accordingly, the ALJ did not err in posing the hypothetical to the VE that incorporated an RFC of light work with a sit/stand option and that did not take into consideration all of Claimant's subjective complaints.

## CONCLUSION

Accordingly, the court **RECOMMENDS** that Claimant's motion for judgment on the pleadings be **DENIED** and that Defendant's motion for judgment on the pleadings be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party

from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 14th day of September, 2009.

DAVID W. DANIEL
United States Magistrate Judge